UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARELL CHANCELLOR,

        Plaintiff,

v.                                                        Case No. 20-cv-11616
                                                          Honorable Linda V. Parker

OFFICER STEPHEN GEELHOOD,
in his individual and representative
capacity, and the CITY OF DETROIT,
a municipal entity,

        Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 49)

On June 19, 2020, Plaintiff Darell Chancellor initiated this lawsuit against

Detroit Police Department ("DPD") Officer Stephen Geelhood, in his individual

and official capacities, and the City of Detroit (collectively, "Defendants").[1]  (ECF

No. 13.)   Mr. Chancellor brings this lawsuit pursuant to 42 U.S.C. § 1983 and the

Fourth, Eighth, and Fourteenth Amendments, claiming that Officer Geelhood

falsely arrested and falsely imprisoned him, influenced and participated in his

_____

[1] On November 9, 2023, United States District Court Judge George Steeh, pursuant to ¶ 2 of Judge Tucker's Order of the Bankruptcy Court, entered an Order of Dismissal dismissing with prejudice Mr. Chancellor's claims against the City of Detroit and Officer Geelhood in his representative capacity only.  (*See* ECF No. 85.)  Therefore, the Court addresses only the claims against Officer Geelhood in his individual capacity.

malicious prosecution, and violated his due process rights.  (*Id*.)  Mr. Chancellor

also alleges that Officer Geelhood is liable for false arrest, false imprisonment,

gross negligence, and malicious prosecution under Michigan laws.  (*Id*.)

This matter is presently before the Court on Defendants' motion for

summary judgment pursuant to Federal Rule of Civil Procedure 56(c), which has

been fully briefed.  (*See* ECF Nos. 49, 81, 84.)  Finding the facts and legal

arguments adequately presented in the parties' filings, the Court is dispensing with

oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).  For the

reasons that follow, the Court grants the motion.

## I.     Factual Background

On October 31, 2011, Officer Geelhood received a tip from a confidential

informant that heroin was being sold and stored at a residential home located at

5023 32nd Street in Detroit, Michigan ("the Property").  (ECF No. 49 at Pg ID

435.)  Janet Chancellor, Mr. Chancellor's mother, owned the home and lived there

with her boyfriend, Alvin Thomas, and Crystal Chancellor, her daughter and Mr.

Chancellor's sister.  (ECF No. 81 at Pg ID 1780.)  The Property was a two-story

home where Ms. Chancellor and her boyfriend lived on the ground floor, and

Crystal's bedroom was on the second floor.  (*Id*.)

The day after Officer Geelhood received the tip, he and his supervisor

surveilled the Property.  (*Id*. at Pg ID 1782.)  They observed who Officer Geelhood

described as a "Black male in his thirties standing at five feet and eight inches and weighing 180 pounds" engage in at least three suspected hand-to-hand drug transactions.  (*Id*. at Pg ID 1783; *see also* ECF No. 50-2.)  Officer Geelhood later identified Mr. Chancellor as the person he observed engaged in the transactions. (ECF No. 49 at Pg ID 438.)

Officer Geelhood detailed the information he received from the confidential informant and the events he observed at the Property in an affidavit and submitted it to a Michigan court magistrate judge as part of a search warrant application. (ECF No. 81 at Pg ID 1783; ECF No. 50-2.)  The magistrate judge approved the search warrant for the Property on November 2, 2011.  (ECF No. 49 at Pg ID 436.) That same day, Officer Geelhood and other members of the DPD Narcotics Section executed the warrant.  (*Id*.)  During the raid, Officer Geelhood discovered and confiscated 571 grams of cocaine from a laundry hamper located on the second floor of the Property where Crystal lived.  (ECF No. 81 at Pg ID 1780.)  Another DPD officer seized two firearms from the same hamper.  (ECF No. 49 at Pg ID 436.)  Mr. Chancellor was not present at the Property during the raid.  (*See* ECF No. 81 at Pg ID 1781.)

On December 27, 2011, a DPD officer prepared an investigator's report, seeking a warrant for Mr. Chancellor's arrest based on DPD's findings from the raid.  (ECF No. 49 at Pg ID 436.)  About a month later, a warrant was issued for

3

Mr. Chancellor's arrest for possession of a controlled substance with intent to

deliver, possession of a controlled substance, felon in possession of a firearm, and

a felony firearm second offense. (*Id*. at Pg 436-37.)   Mr. Chancellor was arrested

on the warrant in May 2012 during a traffic stop. (*Id*. at Pg ID 437.)

Mr. Chancellor's bench trial began in November 2012 in the Wayne County

Circuit Court in Michigan.  (*Id*.)  Officer Geelhood, some of the other officers

present at the raid, and Mr. Chancellor's parole officer[2] testified at the trial. (*Id*. at

Pg ID 437-38.)  However, none of his family members testified.  (*Id*. at Pg ID

441.)  Mr. Chancellor testified on his own behalf.  (*Id*. at Pg ID 439.)  He

maintained that he was not present at the Property when Officer Geelhood

conducted his surveillance on November 1, 2011, and that he did not fit the

physical description of the person Officer Geelhood described in his affidavit.

(ECF No. 81 at Pg ID 1784.)  As such, Mr. Chancellor's defense at trial centered

on the search warrant and whether Officer Geelhood swore a false affidavit against

him.  (ECF No. 49 at Pg ID 439.)

Despite this defense, the trial judge determined that Officer Geelhood was a

credible and reliable witness.  (*Id*. at Pg ID 440.)  Although the judge did not make

a finding as to the man Officer Geelhood saw making hand-to-hand transactions on

---

[2] At the time the search warrant was executed, Mr. Chancellor was on parole for an armed robbery conviction he received in 2003.  (ECF No. 49 at Pg ID 438.)

the night in question, he found that there was sufficient evidence to conclude that

Mr. Chancellor lived at the Property and possessed the drugs that Officer Geelhood

found during the raid. (*Id*. at Pg ID 439-40; ECF No. 81 at Pg ID 1784.)  On

November 12, 2012, the judge convicted Mr. Chancellor of possession of 450 to

999 grams of cocaine and sentenced him to thirty years in prison.[3] (ECF No. 81 at

Pg ID 1784.)

Mr. Chancellor made several attempts to petition his conviction.  He first

appealed to the Michigan Court of Appeals, and the court affirmed the conviction.

(ECF No. 49 at Pg ID 440.)  In 2015, he filed an application to the Michigan

Supreme Court for leave to appeal, which was denied "because [the court] was not

persuaded that the questions presented should be reviewed by [the court]."  (ECF

No. 49 at Pg ID 440; ECF No. 61.)  He also filed a habeas corpus petition in 2015

in this district that was denied and later affirmed by the Sixth Circuit.  (ECF No. 49

at Pg ID 440; ECF Nos. 63, 64.)  The district court judge concluded that the

evidence was sufficient to sustain his conviction of possession of cocaine, that Mr.

Chancellor did not demonstrate that his trial attorney's performance was deficient,

and that the state court's adjudication of his claims was reasonable.  (ECF No. 63

---

[3] The trial judge acquitted Mr. Chancellor of drug delivery, finding that there was insufficient evidence of drug sales at the Property.  (ECF No. 81 at Pg ID 1784.) He also acquitted Mr. Chancellor of the firearm charges because Mr. Chancellor was not present during the raid and the firearms were not readily accessible to him. (*Id*.)

at Pg ID 1240, 1245, 1247.)  In 2019, the Wayne County Circuit Court denied Mr.

Chancellor's motion for relief from judgment, finding that the evidence Mr.

Chancellor presented did not satisfy the requirements for relief from judgment

under Michigan Court Rule 6.508.  (ECF No. 49 at Pg ID 440; ECF No. 65; ECF

No. 66 at Pg ID 1315.)  Lastly, later that year, the Wayne County Circuit denied

Mr. Chancellor's motion to reconsider the denial of his motion for relief from

judgment because it was untimely filed.  (ECF No. 49 at Pg ID 440; ECF No. 67 at

Pg ID 1317.)

Mr. Chancellor made his final effort to challenge his conviction in August

2018 by requesting the Conviction Integrity Unit ("CIU") of the Wayne County

Prosecutor's Office to review his case.  (ECF No. 49 at Pg ID 440-41.)  The CIU

was created in 2017 and directed by attorney Valerie Newman.  (*Id*. at Pg ID 440.)

Ms. Newman and the CIU were charged with investigating criminal cases and,

when there were facts and information that showed a wrongful conviction, present

the case to the Wayne County Prosecutor and reverse the conviction if appropriate.

(ECF No. 81 at Pg ID 1787.)

Upon receipt of Mr. Chancellor's application, the CIU selected his case for

review and investigated the raid that occurred at the Property.  (*Id*.)  The

investigation consisted of interviews and statements from Mr. Chancellor's

relatives and friends, including his mother, his ex-wife, his sister, and his mother's

boyfriend.  (ECF No. 49 at Pg ID 441.)  The CIU did not interview Officer

Geelhood or any of the other government officials involved in Mr. Chancellor's

criminal trial and prosecution.  (*Id.*)  At the conclusion of its investigation, the CIU

determined that there was substantial evidence indicating Mr. Chancellor's

innocence.  (ECF No. 81 at Pg ID 1788; ECF No. 72 at Pg ID 1640-41.)  For

example, according to Ms. Newman, Mr. Chancellor did not match the description

of the alleged drug dealer, the drugs the officers found at the Property did not

match the type of drugs sought in the warrant, Officer Geelhood's trial testimony

did not "ring true," and there was no verification of the confidential informant's

identity.  (ECF No. 81 at Pg ID 1787-88.)

After the investigation, the CIU and Prosecutor's Office determined that it

was necessary to reverse Mr. Chancellor's conviction.  (*Id.* at Pg ID 1788.)  Mr.

Chancellor then obtained new counsel, Gabi Silver, who worked with Ms.

Newman on the reversal.  (ECF No. 49 at Pg ID 442.)  On March 24, 2020, Ms.

Silver and Ms. Newman filed a stipulated order in the Wayne County Circuit Court

to vacate Mr. Chancellor's conviction and sentence.  (*Id.*)  The stipulation did not

contain any findings of fact or conclusions of law.  (*Id.*; ECF No. 81 at Pg ID

1788.)  The judge signed the stipulation, resulting in Mr. Chancellor's release from

prison after spending more than seven years incarcerated.  (ECF No. 49 at Pg ID

442; ECF No. 81 at Pg ID 1788.)

## II.    Standard of Review

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. The court must accept as true the

nonmovant's evidence and draw "all justifiable inferences" in the nonmovant's favor.  *See id*. at 255.

## III.    Applicable Law and Analysis

Officer Geelhood argues that summary judgment is proper because (1) the Court lacks subject matter jurisdiction over this matter, (2) Mr. Chancellor's claims are barred by collateral estoppel, (3) he is entitled to qualified immunity, (4) there is no admissible evidence to establish any of Mr. Chancellor's state or federal claims for false arrest, false imprisonment, malicious prosecution, or denial of due process, and (5) Mr. Chancellor fails to state a viable claim for gross negligence under Michigan law.  (*See generally* ECF No. 49.)  The Court addresses each argument in turn.

### A. Subject Matter Jurisdiction

As a threshold matter, Officer Geelhood contends that Mr. Chancellor cannot bring forth his § 1983 suit for damages because he has not satisfied the requirements of *Heck v. Humphrey*, 512 U.S. 477 (1994).  (ECF No. 49 at Pg ID 444-45.)  Officer Geelhood urges that "the proper response is to dismiss the complaint for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(h)(3)."  (*Id*. at Pg ID 446.)  The Court disagrees.

The Supreme Court holds that a plaintiff cannot recover for damages under § 1983 if success on the claim would "necessarily imply the invalidity" of an

underlying state criminal conviction. *Heck*, 512 U.S. at 486-87. However, even if

*Heck* is implicated, a plaintiff's claims may still be cognizable if he can

"demonstrate that [his] conviction or sentence has already been invalidated." *Id*. at

487. This burden is met when the plaintiff proves "that the conviction or sentence

has been reversed on direct appeal, expunged by executive order, declared invalid

by a state tribunal authorized to make such determination, or called into question

by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id*. In

other words, complaints that act only as collateral attacks on the validity of a

conviction cannot use § 1983 as a vehicle to justice–the plaintiff's conviction must

have been invalidated. *Id*. at 485-86. Claims that do not satisfy *Heck* may be

dismissed for lack of subject matter jurisdiction. *See Hampton v. Marion*, 98 F.

App'x 410, 412 (6th Cir. 2004) (affirming the district court's dismissal of the

plaintiff's complaint for lack of subject matter jurisdiction under *Heck*).

The parties do not dispute that Mr. Chancellor's claims call into question the

validity of his conviction and that *Heck* applies. Instead, the parties disagree on

whether Mr. Chancellor's conviction in state court was invalidated as required by

*Heck*. (ECF No. 49 at Pg ID 444-50; ECF No. 81 at Pg ID 1788-90.) As it stands,

Mr. Chancellor's conviction has not been reversed, expunged, or challenged by the

issuance of a writ of habeas corpus. (ECF No. 49 at Pg ID 445.) Thus, the Court

must determine whether a state tribunal declared his conviction invalid.

10

As pointed out by Mr. Chancellor, the Chief Judge of the Michigan Third Judicial Circuit in Wayne County Circuit Court, a state tribunal authorized to adjudicate and dismiss state criminal cases, signed the stipulated order vacating his conviction and sentence on March 24, 2020.  (*See* ECF No. 81 at Pg ID 1788-89; ECF No. 81-15 at Pg ID 2994.)  Despite the Wayne County Circuit Court's earlier rejection of Mr. Chancellor's post-conviction motion for relief, the CIU investigated his case and determined that he was innocent.  (ECF No. 49 at Pg ID 448-49.)  As a result, Ms. Newman and Ms. Silver entered the stipulated order vacating his conviction and sentence and dismissing the case against him.  (*Id*. at Pg ID 449.)

Officer Geelhood takes issue with the circumstances surrounding the stipulation and suggests that the Court should make void the state court's decision to vacate and dismiss with prejudice Mr. Chancellor's conviction and sentence. (*Id*. at 448-49.)  That determination would, ironically, be seen as *ultra vires* as "lower federal courts possess no power [whatsoever] to sit in direct review of state court decisions."  *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 n.16 (1983) (citation omitted).  Such actions are reserved for the United States Supreme Court, not federal district courts.  *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 280 (2005) (explaining that the "authority to review a state-court judgment" is vested "solely in [the Supreme] Court"); *Hall v. Callahan*, 727 F.3d

11

450, 453 (6th Cir. 2013) ("Federal district courts do not stand as appellate courts for decisions of state court.").

Because Mr. Chancellor's conviction was invalidated and the Court has subject matter jurisdiction, *Heck* does not bar Mr. Chancellor's case.

### B. Collateral estoppel

One of the defenses Officer Geelhood raises against Mr. Chancellor's state and federal false arrest, false imprisonment, and malicious prosecution claims is collateral estoppel.  (ECF No. 49 at Pg ID 452-55.)  He argues that the claims are barred "because the existence of probable cause has been actually litigated, and determined by valid and final judgments of both Michigan and federal courts."  (*Id*. Pg ID 452-53.)  The Court does not find merit to this argument.

The Supreme Court holds that "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *see also* 28 U.S.C. § 1738.  Thus, this Court must look to Michigan law to determine what preclusive effect to give Mr. Chancellor's judgment he obtained in the Wayne County Court criminal proceeding.

Michigan courts will collaterally estop a party from litigating an issue

> when (1) there is identity of parties across the proceedings, (2) there was a valid, final judgment in the first proceeding, (3) the

12

> same issue was actually litigated and necessarily determined in the first proceeding, and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Buttino v. City of Hamtramck*, 87 F. App'x 499, 502 (6th Cir. 2004). In Michigan, however, "vacated rulings have no preclusive effect." *Peterson v. Heymes*, 931 F.3d 546, 554 (6th Cir. 2019). The Sixth Circuit interprets this to mean that a vacated judgment "technically leav[es] nothing to which we may accord preclusive effect." *Id.* (quoting *Dodrill v. Ludt*, 764 F.2d 442, 444 (6th Cir. 1985)).

As discussed, the Wayne County Circuit Court vacated the sentence and judgment of conviction against Mr. Chancellor when it authorized the stipulated order. (*See* ECF No. 81-15 at Pg ID 2994.) In effect, there is no "valid and final judgment" or factual findings with respect to Mr. Chancellor's criminal conviction in state court. Therefore, Mr. Chancellor is not precluded from litigating his federal and state claims of false arrest, false imprisonment, and malicious prosecution.

**C. Federal Claims**

Officer Geelhood next contends that he is entitled to qualified immunity from each of Mr. Chancellor's claims arising under federal law because Mr. Chancellor has not shown that Officer Geelhood "stated a deliberate falsehood or showed reckless disregard for the truth" concerning the search warrant affidavit, or

13

put differently, there was a lack of probable cause.  (ECF No. 49 at Pg ID 450-52, 459-62.)  The Court concludes that Officer Geelhood is immune from these claims.

Section 1983 creates a private right of action against a government official who deprives an individual of his or her constitutional rights under color of state law.  42 U.S.C. § 1983.  Yet a plaintiff's right to sue a government official, such as a police officer, may be eliminated in certain instances.  Qualified immunity shields an officer from personal liability and civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Hall v. Navarre*, 118 F.4th 749, 759 (6th Cir. 2024) (same).  While the Court must adopt the plaintiff's version of the facts when evaluating qualified immunity on a motion for summary judgment, *see Regets v. City of Plymouth*, 568 F. App'x 380, 386 (6th Cir. 2014), the plaintiff bears the ultimate burden of showing that a defendant is not entitled to immunity, *see Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002).

The qualified immunity analysis consists of a two-step inquiry: (1) whether a constitutional right has been violated and (2) whether that right was clearly established.  *See Pearson*, 555 U.S. at 232; *Getz v. Swoap*, 833 F.3d 646, 652 (6th Cir. 2016).  Both prongs must be established for the claim to go before a jury.  *See*

14

*Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) ("If either [prong] is not satisfied, qualified immunity will shield the officer from civil damages.").

    *i.  Probable cause*

Because Mr. Chancellor's federal false imprisonment, false arrest, and malicious prosecution claims center on probable cause, the Court analyzes these claims together in order to determine whether Mr. Chancellor has satisfied the qualified immunity analysis.

Generally, "a showing of probable cause will provide a complete defense" to claims of false arrest, false imprisonment, and malicious prosecution.  *See Tlapanco v. Elges*, 969 F.3d 638, 652 (6th Cir. 2020) (quoting *Halasah v. City of Kirtland*, 574 F. App'x 624, 629 (6th Cir. 2014)); *see also Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) ("[B]ecause a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution.") (citations omitted).  "[P]robable cause exists when the police have 'reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'"  *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) (quoting *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964)).  The officer

must consider all evidence, including exculpatory evidence.  *Id*. at 318 (holding

that probable cause is determined by considering the totality of the circumstances).

A police officer "cannot, in good faith, rely on a judicial determination of

probable cause [to absolve them of liability] when that determination was premised

on an officer's own material misrepresentations to the court."  *Gregory v. City of*

*Louisville*, 444 F.3d 725, 758 (6th Cir. 2006).  Where the plaintiff claims, such as

here, that an officer lied in a search warrant to establish probable cause, he "must

make a substantial showing that the defendant stated a deliberate falsehood or

showed reckless disregard for the truth" that was "material to the finding of

probable cause."  *Butler v. City of Detroit*, 936 F.3d 410, 418 (6th Cir. 2019)

(quotations omitted).  This "demanding standard" is met "when, for example, [the

plaintiff] presents proof that at the time the officer swore out the affidavit, she

knew of or possessed information that contradicted the sworn assertions."  *Id*. at

418-19.

Here, Officer Geelhood's sworn affidavit in support of the search warrant

for the Property provided that:

> 1. On 10/31/11 Affiant received information from a creditable and
> reliable informant.  This CI stated to affiant that he/she knows
> there is a large amount of Heroin at the [5023 32nd], which is
> being stored and sold at this location.  The affiant has used this CI
> on over (3) occasion[s] resulting in (3) arrest for [Violation of
> Controlled Substances Act] with cases pending in 36th district
> and 3rd circuit court resulting in the confiscation of quantities of

16

Marijuana, Cocaine and firearms.  Proving this CI is familiar with narcotics and its packaging.

2. On 11/01/11 Affiant set-up a fixed surveillance on 5023 32nd, and during the course of 30 minutes, Affiant observed at least 3 persons separately go to the above address, knock on the door of 5023 32nd, engage in a short conversation with a [Black male in his thirties standing at five feet and eight inches and weighing 180 pounds], then the suspected buyer would stay outside and the above described seller returned and made a suspected narcotic transaction with the buyer in which money was exchanged for suspected Heroin.  Affiant has seen this type [of] activity several times in the past, and finds this type of activity to be consistent with on going narcotic activity.

(ECF No. 50-2 at Pg ID 474.)

Mr. Chancellor's first challenge to the warrant affidavit is the reliability of the confidential informant.  (ECF No. 81 at Pg ID 1785.)  He maintains that the informant was not a credible source to establish probable cause.  (*Id*.)  Indeed, Officer Geelhood's description leaves open many questions as to the basis of the informant's statements about the drug sales at the Property.  But this fact alone does not create a jury question–notably when Officer Geelhood surveilled the Property to corroborate the informant's statements.  *See United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000) ("[I]nformation received from an informant whose reliability is not established may be sufficient to create probable cause when there is some independent corroboration by the police of the informant's information.").

17

With respect to the surveillance, Mr. Chancellor argues that Officer Geelhood did not surveil the Property on November 1, 2011, and Officer Geelhood did not see him engage in hand-to-hand drug transactions.  (ECF No. 81 at Pg ID 1785.)  In support of these allegations, Mr. Chancellor maintains that he was not at the Property on the night in question.  (*Id*.)  During a deposition with defense counsel, Mr. Chancellor's mother testified that she did not see Officer Geelhood surveilling her home or anyone dealing drugs near her home on that night.  (*Id*.)  She also testified that the lighting conditions around the Property would have prevented Officer Geelhood from seeing anyone on her porch.  (*Id*.)  In addition, Mr. Thomas testified that he was present at the Property on November 1 and did not observe any drug transactions while sitting on the Property's porch during the hours Officer Geelhood claims he conducted his surveillance.  (*Id*.)  Viewing these facts in the light most favorable to Mr. Chancellor, the Court does not find the existence of a genuine issue of material fact as to whether Officer Geelhood made deliberate falsehoods or showed reckless disregard for the truth with respect to the information he provided in the search warrant affidavit.

The Sixth Circuit has consistently held that a substantial showing that an officer engaged in deliberate falsehoods or reckless disregard for the truth, requires a plaintiff to point to evidence that provides insight into the officer's mental state. *Butler*, 936 F.3d at 418.  For example, the plaintiff in *Butler* claimed that the

affidavit the defendant submitted contained false statements, which wrongly led the magistrate judge to find probable cause to search his home. *Id*. at 417. The court upheld the lower court's decision granting the defendant officer qualified immunity because the plaintiff failed "to [meet] the exacting standard" by presenting evidence showing the officer's mental state or knowledge when he submitted the affidavit. *Id*. In response to the officer's statement that he watched a drug dealer's associate go into the plaintiff's house, the plaintiff argued: "that nobody matching [the officer's description of the associate] had ever entered his home while he was there, and his extensive camera and security system would have notified him if such a person had entered while he was not there." *Id*. at 419 (quotations omitted). The court held that the plaintiff had to do more than simply present factual inaccuracies; his claims contradicting the affidavit were insufficient. *Id*.

In its analysis, the court pointed to a similar case where a defendant indicted on charges arising from a confidential informant's tips and a subsequent raid submitted an affidavit from his landlord who stated that "the property was vacant during the period the informant described," she was regularly on the property and "never saw persons matching the description the informant provided," and she was "unaware of any drug activity on her property." *Id*. at 419-20 (citing *United States v. Fields*, 229 F.3d 1154, 1154 (6th Cir. 2000)). The landlord's statements did not

19

meet the requisite showing. *Id*. at 420.  The court reiterated that "any *inference*

concerning [an officer's] conduct cannot be said to amount to substantial evidence

that they made false statements in the affidavit . . . with reckless disregard for the

truth." *Id*. (emphasis added) (citing *Fields*, 229 F.3d at 1154).

Like the above cases, the evidence Mr. Chancellor presents here simply

contradicts Officer Geelhood's affidavit and does not show that Officer Geelhood

had bad motive or a culpable state of mind with respect to the statements he swore

out in the affidavit.  Without such a showing, the Court has no basis for inferring

that Officer Geelhood was anything worse than negligent or mistaken as to the

identity of the person he saw during his surveillance–each of which is a scenario

that does not justify stripping Officer Geelhood of qualified immunity.  *Id*. at 418-

19, 422 (reasoning that officers need "breathing room" for innocent mistakes and

negligence).

The fact that Mr. Chancellor has not offered substantial evidence or facts

showing what information was available to Officer Geelhood when he swore out

the affidavit weighs further against submitting the issue of probable cause to a jury.

For example, the Sixth Circuit held in *Sykes* that probable cause was lacking

because the officer "deliberately made false or misleading statements and omitted

material information from his warrant application in order to manufacture probable

cause." *Sykes*, 625 F.3d at 306.  There, the plaintiff produced evidence, a store

surveillance video, proving that the officer lied and misled the court in his warrant request. *Id*. at 306-07. The video revealed that the officer had information available to him when he submitted the warrant application that contradicted his sworn statements and would allow a jury to find that the plaintiff did not commit the alleged offense. *Id*. at 307.

The Sixth Circuit reached the same conclusion in *Tlapanco*. *Tlapanco*, 969 F.3d at 650. The *Tlapanco* court reversed the district court's grant of qualified immunity to the defendant officer, holding that "while there [was] no indication that [the officer] acted intentionally or deliberately, a reasonable jury could find that [he] recklessly disregarded information in his possession negating probable cause . . . ." *Id*. In that case, a minor reported to the police that a user on a text messaging application was blackmailing her and demanding her to send nude photographs. *Id*. at 643-44. An investigation of the blackmailer led police to search Tlapanco's apartment, seize his electronic devices, and arrest and detain him. *Id*. at 644. However, the defendant officer left out crucial information in the search warrant application that demonstrated that Tlapanco was innocent and not the person harassing the minor. *Id*. at 650. For instance, the defendant officer did not confirm the perpetrator's username despite having multiple means to verify the information independently, and he failed to include or consider exculpatory evidence in his affidavit, such as activity logs from the messaging application. *Id*.

21

at 650-52.  The court held that the totality of the circumstances presented a genuine issue of material fact as to whether the defendant officer acted recklessly.  *Id*. at 652.

Mr. Chancellor has not made such a showing here.  It is clear that Officer Geelhood had doubts about the truth and reliability of the confidential informant's tip, hence his surveillance of the Property the following day.  However, Mr. Chancellor has not pointed to any evidence that shows that Officer Geelhood possessed contradicting information or recklessly disregarded any facts when he made the sworn statements about his surveillance of the Property.

Mr. Chancellor also makes the general assertion that Officer Geelhood lacked probable cause for the search warrant and through the criminal proceedings because "the magistrate who approved the warrant in this case, and the judge who denied the motion to suppress the evidence obtained from that warrant, were not privy to the fact that Geelhood was lying in his search warrant affidavits."  (ECF No. 81 at Pg ID 1794.)  Even accepting these claims as true, Mr. Chancellor has not pointed to specific facts for a reasonable jury to find that Officer Geelhood lied in the search warrant at issue in the instant case.

Accordingly, the Court finds that Mr. Chancellor has not shown a genuine issue of material fact as to whether probable cause existed to initiate the search warrant against him.  Specifically, Mr. Chancellor fails to make a substantial

showing that Officer Geelhood intentionally misled the magistrate judge when he swore out the affidavit and identified Mr. Chancellor as the person he saw engaging in illegal activity on the evening of November 1.  Officer Geelhood did not violate Mr. Chancellor's constitutional rights.

    *ii.  Due process*

    Regarding his last claim under § 1983, Mr. Chancellor maintains that Officer Geelhood is liable for violating his due process rights because Officer Geelhood was "in possession of evidence (in the form of his knowledge) that he had falsified an affidavit and planted evidence."  (ECF No. 81 at Pg ID 1798.)  According to Mr. Chancellor, he was prejudiced by Officer Geelhood's decision to withhold that evidence.  (*Id*.)

    The Supreme Court held in *Brady v. Maryland*, 373 U.S. 83, 87 (1963) "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  By extension, police officers have a similar obligation under *Brady*.  "[T]hey [must] inform the prosecutor about evidence that undermine[s] the state's preferred theory of the crime."  *Carter v. City of Detroit*, 678 F. App'x 290, 293 (6th Cir. 2017) (quoting *D'Ambrosio v. Marino*, 747 F.3d 378, 389 (6th Cir. 2014)).

To establish a *Brady* violation, Mr. Chancellor has the burden of showing that "(1) the evidence at issue was favorable to [him], either because it is exculpatory, or because it is impeaching; (2) [Officer Geelhood] suppressed the evidence, either willfully or inadvertently; and (3) the suppressed evidence was material such that prejudice ensued from its nondisclosure." *Carter*, 678 F. App'x at 293 (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

Applying the foregoing standard, the Court does not find that Mr. Chancellor can meet his burden as to his *Brady*-based due process claim. The two theories Mr. Chancellor offers to support the claim are insufficient under the second prong of the *Brady* analysis. As previously discussed, the record does not evidence a question of fact that Officer Geelhood falsified the affidavit used to secure the search warrant, let alone that he hid such information from the prosecution. Likewise, the Court does not find a triable issue regarding evidence planted by Officer Geelhood.

At most, the discrepancy between Officer Geelhood's description of the person he saw during his surveillance of the Property and Mr. Chancellor's actual physical build was a simple error as to Mr. Chancellor's height and weight, rather than a deliberate fabrication. Because no evidence exists for a jury to conclude that Officer Geelhood lied and did not disclose this untruth to the prosecution, Mr. Chancellor cannot advance his *Brady* violation claim on the theory that Officer

24

Geelhood violated his due process rights by being "in possession of evidence (in the form of his knowledge) that he had falsified an affidavit."

Moreover, the Court does not find any basis to hold Officer Geelhood liable under *Brady* for the drugs that were found at the Property during the raid.  Mr. Chancellor states that Officer Geelhood "may have even gone so far as to plant the cocaine that was allegedly found" in the laundry basket, ECF No. 81 at Pg ID 1780, 1793, and "once that information came to light, the prosecutor's office requested the court vacate [Mr. Chancellor's] conviction and dismissed all the charges against" him, *id*. at Pg ID 1798.  Not only is it unestablished that Officer Geelhood planted drugs during the raid, but Mr. Chancellor appears to suggest that either (1) the Wayne County Prosecutor's Office knew that Officer Geelhood planted the drugs and did not make the information known prior to his prosecution or (2) that Officer Geelhood withheld the fact that he planted the drugs from the prosecution.  (*See id*.)  Neither scenario would allow a reasonable jury to find in Mr. Chancellor's favor on his *Brady* claim.

In the first scenario, Officer Geelhood would have disclosed the information to the prosecution as required, which would mean that he did not violate *Brady*.  On the other hand, Mr. Chancellor has not offered any evidence to support the second scenario.  The fact that the Prosecutor's Office moved the court to vacate his conviction and sentence is not direct evidence that proves Officer Geelhood

25

withheld information from the prosecution about the cocaine.  *See Army v. Collins*, 488 F. App'x 957, 962 (6th Cir. 2012) (holding that the *Brady* violation claim failed, in part, because the plaintiff did not offer any direct evidence, such as testimony from the defendant officer and prosecutor, that would support the conclusion that the officer did not deliver phone records to the prosecutor); *Carter*, 678 F. App'x at 293 (explaining that there was no direct evidence that the defendant officers suppressed exculpatory fingerprint and palm-print evidence when the plaintiff did not depose the individual officers or the prosecutor involved in his criminal trial).  On this basis, the Court finds that there is insufficient evidence for a jury to conclude that Officer Geelhood concealed evidence related to the surveillance and raid of the Property from the prosecution in violation of *Brady* and Mr. Chancellor's due process rights.

According to the above analyses, there is no genuine issue of material fact as to whether probable cause was lacking for Mr. Chancellor's arrest, imprisonment, and prosecution or that Officer Geelhood committed a *Brady* violation. Effectively, he has not met his burden in showing that Officer Geelhood violated his constitutional rights, the first prong of the qualified immunity analysis.  Thus, Officer Geelhood is entitled to qualified immunity.

**D. State Law Claims**

26

Turning to Officer Geelhood's final arguments, he asserts that (1) Michigan law entitles him to governmental immunity from Mr. Chancellor's state intentional tort claims of false arrest, false imprisonment, and malicious prosecution, ECF No. 49 at Pg ID 455-57, 463-64, and (2) Mr. Chancellor does not have a viable gross negligence claim under Michigan law, *id.* at Pg ID 462-63.  The Court agrees.

   i.  *Intentional torts*

With respect to Mr. Chancellor's intentional tort claims, Officer Geelhood argues, in part, that he is immune from the claims because there is no evidence to satisfy the elements of each cause of action.  (*Id.* at Pg ID 463-64.)

The Sixth Circuit recognizes that, like the federal qualified immunity doctrine, Michigan's governmental immunity law turns on the existence of probable cause for claims of false arrest, false imprisonment, and malicious prosecution.  *Fisher v. Jordan*, 91 F.4th 419, 428-29 (6th Cir. 2024) ("[T]he probable cause analysis for federal Fourth Amendment claims is essentially the same under Michigan law.") (citation and quotations omitted); *Peterson Novelties, Inc. v City of Berkley*, 672 N.W.2d 351, 362 (Mich. 2003) ("To prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause."); *Matthews v. Blue Cross & Blue Shield of Mich.*, 572 N.W.2d 603, 609-10 (Mich. 1998) (holding that malicious prosecution exists "where a police officer knowingly swears to false

27

facts in a complaint, without which there is no probable cause.").  That being so, if it is determined that probable cause existed as to a plaintiff's federal claims, then the officer will be entitled to governmental immunity as to any state law intentional tort claims.  *Fisher*, 91 F.4th at 428-29 (analyzing the issue of probable cause in relation to the defendants' federal qualified immunity defense and ultimately holding that the officers were entitled to governmental immunity from the plaintiff's state law claims because probable cause existed).

As explained under the qualified immunity discussion, there was probable cause for the magistrate judge to issue the search warrant for the Property and there is no genuine issue of material fact as to whether Officer Geelhood made any material misrepresentations to the court when he swore out the supporting affidavit.  *See supra* Part C.  Accordingly, Officer Geelhood is entitled to immunity from the intentional tort claims Mr. Chancellor brings under Michigan law.

ii.  *Gross Negligence*

Officer Geelhood next challenges Mr. Chancellor's gross negligence claim, asserting that he has not identified a common law duty and that the claim is improperly grounded in his state-based intentional torts claims.  (ECF No. 49 at Pg ID 462.)  According to Officer Geelhood, Mr. Chancellor's gross negligence claim, therefore, cannot stand.  (*Id*.)

28

In Michigan, a gross negligence claim is not a standalone claim and "is only relevant in determining whether a governmental actor is entitled to immunity for negligent tort liability." *Collins v. Ferguson*, No. 17-CV-10898, 2017 WL 4387287, at *6 (E.D. Mich. Oct. 3, 2017) (citing *Bletz v. Gribble*, 641 F.3d 743, 757 (6th Cir. 2011)). The plaintiff must identify a common-law duty. *See Beaudrie v. Henderson*, 631 N.W.2d 308, 311, 315 n.12 (Mich. 2001). Additionally, the Sixth Circuit plainly rejects a plaintiff's "attempts to transform claims involving elements of intentional torts into claims of gross negligence." *Bletz*, 641 F.3d at 756; *see VanVorous v. Burmeister*, 687 N.W.2d 132, 143 (Mich. 2004), *overruled on other grounds by*, *Odom v. Wayne Cty.*, 760 N.W.2d 217 (Mich. 2008)).

The Court finds Mr. Chancellor's argument that his gross negligence claim is not factually based on any intentional torts persuasive. (*See* ECF No. 81 at Pg ID 1810.) As highlighted by at least one other court in this district, there is a distinction between the intent requirements in claims involving deliberate indifference and negligence that could allow Mr. Chancellor to overcome *VanVorous* and *Bletz*. *See Lippett v. Adray*, No. 18-CV-11175, 2023 WL 3774508, at *6 (E.D. Mich. June 2, 2023). But the Court's conclusion on this issue is inconsequential here.

Mr. Chancellor's claim of gross negligence falls short because he has not identified a legal duty that would "'require[] [Officer Geelhood] to conform to a particular standard of conduct in order to protect [him] against unreasonable risks of harm.'" *Nappier by Nappier v. Governor*, No. 344363, 2019 WL 1211469, at *6 (Mich. Ct. App. Mar. 14, 2019) (quoting *Riddle v. McLouth Steel Products Corp.*, 485 N.W.2d 676 (Mich. 1992)); *Collins v. Ferguson*, No. 17-CV-10898, 2017 WL 4387287, at *7 (E.D. Mich. Oct. 3, 2017) ("The question of duty is ordinarily a question of law for the court to decide.") (citing *Jackson v. Oliver*, 514 N.W.2d 195 (Mich. 1994)).

Even if the Court found that Officer Geelhood owed a duty to Mr. Chancellor, the claim would still be incognizable based on merit.  The record does not reflect any evidence that would lead a reasonable jury to find that Officer Geelhood's "conduct [was] so reckless as to demonstrate a substantial lack of concern for whether an injury results," *id.*, which was the proximate cause of the injury, *Kendricks v. Rehfield*, 716 N.W.2d 623, 625 (Mich. Ct. App. 2006); *see also* Mich. Comp. Laws § 691.1407(2); *Bletz*, 641 F.3d at 756.  For instance, Mr. Chancellor has not presented any evidence that Officer Geelhood acted in bad faith in swearing out the statements in the search warrant affidavit that authorized the search of the Property and his arrest.

Accordingly, Officer Geelhood is entitled to summary judgment on the false arrest, false imprisonment, malicious prosecution, and gross negligence claims Mr. Chancellor alleges based on Michigan law.

## IV. Conclusion

Despite the state court vacating his sentence and conviction, Mr. Chancellor has not set forth specific facts showing that there is a triable issue as to key elements of all his claims: that Officer Geelhood (1) made material and deliberate falsehoods or showed reckless disregard for the truth in swearing out the affidavit and searching the Property and (2) suppressed this information from the prosecution, eliminating the probable cause needed to ultimately arrest, prosecute, and imprison him.  Mr. Chancellor's Michigan-based gross negligence claim falls short for similar reasons in addition to the fact that he has not identified a legal duty that Officer Geelhood owed him.  On these facts, the Court has no basis to find Officer Geelhood liable for Mr. Chancellor's state and federal claims.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 (ECF No. 49) is **GRANTED**.

**IT IS FURTHER ORDERED** that the case is **DISMISSED WITH**

**PREJUDICE**.

**SO ORDERED**.

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: March 31, 2025